IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V. NO. 1:20-CR-59-5

TRAVIS WEBB

**OPINION AND ORDER**

    This multidefendant criminal case is before the Court on Travis Webb's motion to suppress all evidence resulting from a traffic stop. Following an evidentiary hearing on the motion, the Court concludes that because the traffic stop of Webb's vehicle was supported by reasonable suspicion, suppression must be denied.

**I
Procedural History**

    On May 7, 2021, Travis Webb and fourteen other individuals were named in a five-count superseding indictment[1] charging conspiracies to distribute marijuana, methamphetamine, and/or cocaine, along with related crimes. Doc. #192. Webb is named only in Count One, which charges him and six others with conspiracy to distribute marijuana "from on or about January of 2019 to on or about August of 2020." *Id.* at 1–2.

    On December 6, 2021, Webb filed a motion to suppress all witness testimony and physical evidence seized from a black Chevrolet Tahoe he was driving at the time of a February 12, 2020, traffic stop. Doc. #405. The government responded in opposition on December 14, 2021. Doc. #434. Webb did not reply.

    An evidentiary hearing on the motion was held May 11, 2022. Doc. #567. The government

---

[1] Webb was named in one count of the original indictment. Doc. #1.

called Mark Blackerby as its only witness. Doc. #571. Webb did not call any witnesses. At the conclusion of the hearing, the Court took the motion to suppress under advisement.

## II
## Standard

Generally, "[t]he party seeking suppression has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Beaudion*, 979 F.3d 1092, 1102 (5th Cir. 2020). But where, as here, evidence has been obtained through a warrantless search and seizure, "the government bears the burden of proving, by a preponderance of the evidence, that the search and seizure were constitutional." *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

## III
## Factual Background

On February 12, 2020, Travis Webb was driving a black Chevrolet Tahoe with an Arizona license plate traveling eastbound on Interstate 40 near the Oklahoma and Arkansas border, with Kendra Green as a passenger. Arkansas State Trooper Mark Blackerby, who was patrolling Interstate 40, observed the Tahoe cross the fog line three different times—once before the dash cam in his patrol car started recording, and twice after the recording began[2]—and initiated a traffic stop based on the Tahoe crossing the fog line. The traffic stop[3] led to a search of the Tahoe where

---

[2] At the hearing, Blackerby explained how the dash cam in his patrol car operates. The dash cam constantly records video but only records audio and stores all footage upon the occurrence of a triggering event—when the patrol car reaches a certain speed, the emergency lights are turned on, or Blackerby manually activates it. In addition to recording both audio and video upon a triggering event, the dash cam system will retain the preceding one minute of video. Blackerby testified that he had a better view of the Tahoe than what is depicted in the dash cam video because while the dash cam is stationary, he was able to turn his head.

[3] When Blackerby approached the vehicle, he told Webb and Green he pulled them over because they crossed the fog line twice in a curve. Green stated that it was her fault likely due to her dancing. Blackerby then inquired about their trip, asked for Webb's driver's license, and, after Green informed him that her brother-in-law rented the Tahoe, asked for the rental agreement. When Blackerby ran Webb's license, he discovered a warrant for Webb's arrest out of Nevada for burglary.

four duffle bags of marijuana were discovered. Webb was charged with careless and prohibited driving pursuant to Arkansas Code § 27-51-104, possession of a controlled substance with purpose to deliver, and possession of drug paraphernalia.

During Blackerby's testimony at the suppression hearing, the government introduced the dash cam footage,[4] a copy of Arkansas Code § 27-51-104,[5] two still shot photos from the dash cam video, and Blackerby's incident report. Docs. #579-1 to #579-4. The dash cam video and the still shot photos show the tires of the Tahoe on the fog line and/or slightly across the fog line two different times.

## IV
## Analysis

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is reasonable under the Fourth Amendment if, at its inception, the stopping officer had "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020). "A traffic violation provides officers with authority for an investigative stop." *United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015).

In his motion to suppress, Webb argues that "Blackerby's initial stop was not legally justified" and therefore the drugs found in the vehicle are fruit of the poisonous tree. Doc. #405 at 4–6. Webb contends the dash cam video shows he "does not cross over the fog line until after he has already exited into the rest area" and "[i]f anything, [he] rides on the fog line but does not

---

[4] The video footage shows the windshield wipers of Blackerby's patrol car operating. Blackerby testified it was "sprinkling rain" at the time.

[5] Blackerby testified about his experience enforcing Arkansas Code § 27-51-104.

cross the fog line and maintains proper control over his vehicle." *Id.* at 4. The government counters in its response that the initial stop was justified because Blackerby observed Webb "swerving across the fog line while they were driving on a curvy portion of Interstate 40," as depicted in the dash cam video. Doc. #434 at 3.

At the hearing, Webb maintained he was not driving carelessly and did not cross the fog line. Relying on *Barrientos v. State*,[6] he argued Arkansas law allows a driver to drive on the fog line but not cross it and, relying on *United States v. Grant*,[7] crossing the fog line once is not enough to support probable cause. The government distinguished the facts in this case from *Grant* because Webb crossed the fog line more than once and, relying on *Baker v. State*,[8] argued that even if Webb only drove on the fog line and did not cross it, Arkansas law does not allow a driver to drive on the fog line.

Arkansas' careless driving statute prohibits operating a vehicle "in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, … or in such a manner as to evidence a failure to maintain proper control on the public thoroughfares or private property in the State of Arkansas." Ark. Code Ann. § 27-51-104(a). The statute also prohibits "operat[ing] a vehicle in any manner when the driver is inattentive and such inattention is not reasonable and prudent in maintaining vehicular control." Ark. Code Ann. § 27-51-104(b)(8). As the government correctly argued at the hearing, a driver "le[aves] the confines of [his] lane when [he drives] on the fog line." *Baker v. State*, 640 S.W.3d 431, 433 (Ark. Ct. App. 2022).

There is a distinction between weaving within your own lane of travel and driving

---

[6] 39 S.W.3d 17, 21 (Ark. Ct. App. 2001) (holding that weaving within one's own lane does not constitute a traffic violation).

[7] No. 2:20-cr-20007, 2020 WL 4038331, at *6 (W.D. Ark. July 10, 2020) (holding traffic stop was not supported by probable cause when driver crossed the fog line once), *report and recommendation adopted*, No. 2:20-cr-20007, 2020 WL 4047221 (W.D. Ark. July 17, 2020).

[8] 640 S.W.3d 431 (Ark. Ct. App. 2022).

4

on a fog line. … [I]f a highway is comprised of the entire width between the boundary lines, then the lines themselves must be outside the permissible lane of travel because, logically, the "boundary" cannot be the outer edge of the line.

*Id.* (interpreting § 27-51-104 to affirm the "trial court's finding that driving on the fog line is not maintaining the car 'entirely within' the lane and does not evidence control of the vehicle").

Based on Blackerby's testimony, the dash cam video, and the still shot photos, at the inception of the traffic stop, Blackerby had reasonable suspicion that Webb committed a traffic violation. Blackerby stopped Webb after observing him drive over the fog line, in violation of Arkansas law. Although the dash cam video and still shot photos do not clearly show Webb completely crossing *over* the fog line, such evidence clearly shows Webb at least drove *on* the fog line twice. And Blackerby testified he observed the same an additional time before the dash cam started recording. Because the initial stop was justified, the motion to suppress must be denied.

## V
## Conclusion

Webb's motion to suppress [405] is **DENIED**.

**SO ORDERED**, this 21st day of June, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**